**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL APATOW | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:21-CV-01692 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF STRATFORD, | : | JANUARY 6, 2023 |
| ROBERT MCGRATH, RONALD ING, | : | |
| and LAURA HOYDICK, | : | |
| Defendants. | : | |

**RULING ON MOTION TO DISMISS**
**(DOC. NO 13)**

## I.  INTRODUCTION

Plaintiff Michael Apatow ("Apatow") brings this action under section 1983 of title 42 of the United States Code ("Section 1983"); the Americans with Disabilities Act ("ADA"); the Rehabilitation Act ("RA"); as well as Connecticut state law against Town of Stratford ("Stratford"), Robert McGrath ("McGrath"), Ronald Ing ("Ing"), and Laura Hoydick ("Hoydick").  Apatow alleges violations of his rights arising from his formal complaints about, and termination from, the Stratford Fire Department ("SFD").

Before this court is the defendants' Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 13), which the plaintiff opposes.  Plaintiff's Opposition ("Pl.'s Opp'n") (Doc. No. 21). For the reasons set forth below, the Motion to Dismiss is granted.

II.  **BACKGROUND**

A.  <u>Factual Background</u>[1]

For thirteen years, Apatow served as a firefighter with the SFD.  Compl. ¶ 11.

His tenure was marked by hazardous rescues, unit citations, and other recognitions.  <u>Id.</u>

at ¶ 12.  However, Apatow's time with the SFD was also marred by epithets from his

fellow firefighters in reference to his girlfriend's Black son as well as a working

environment that was generally "exceedingly hostile and intimidating."  <u>Id.</u> at ¶¶ 16, 29.

Heated arguments were a regular occurrence in the firehouse, and these

disagreements were known to escalate to violence.  <u>Id.</u> ¶¶ 17, 24.

On one occasion, a colleague threw a wooden cutting board in a "frisbee-like"

manner at the plaintiff.  <u>Id.</u> at ¶ 25.  Apatow attempted to file a written complaint about

the incident, but it was refused by the Assistant Chief, who directed him instead to "go

out back and fight, fight it out."  <u>Id.</u> at ¶ 26.  The firefighter who flung the cutting board at

Apatow faced no disciplinary action, and supervisors at the SFD took "no steps" to

ameliorate the hostility among the firefighters.  <u>Id.</u> at ¶ 27.  The state of the work

environment induced Post Traumatic Stress Disorder ("PTSD") and cardiac distress for

Apatow, <u>id.</u> at ¶ 30, but his complaints noting this toll on his body only resulted in

increased scrutiny by his supervisors.  <u>Id.</u> at ¶ 31.

The situation with Apatow's colleagues came to a head when a fellow firefighter

"hid essential components of the plaintiff's fire safety gear."  <u>Id.</u> at ¶ 33.  While tensions

---

[1] The facts in this section are drawn from the well-pleaded allegations in the Complaint.  <u>See</u> Complaint ("Compl.") (Doc. No. 1).  Because, at the motion to dismiss stage, the court must accept all factual allegations in the Complaint as true, "we describe the facts as alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and construing any ambiguities in the light most favorable to upholding the plaintiff's claim."  <u>Sung Cho v. N.Y.C.</u>, 910 F.3d 639, 642 n.1 (2d Cir. 2018) (internal quotation marks and citations omitted).

were high, another firefighter intervened and cornered Apatow.  Id.  This intimidation "forc[ed Apatow]" to defend himself.  Id.  Following the incident, Apatow was terminated on December 20, 2018.  Id. at ¶¶ 32–33.  Although there were at least three prior altercations among SFD firefighters that led to physical injury and property damage, id. at ¶¶ 37-38, this was the first time a firefighter was terminated for his involvement in such an incident, id. at ¶ 35.  Beyond the disciplinary action, the defendants—including McGrath, the Chief of the SFD; Ing, the Human Resources Director for Stratford; and Hoydick, the Mayor of Stratford—reported the altercation to the police, leading to Apatow's arrest and prosecution.  Id. at ¶ 39.

   B.  Procedural Background

Apatow filed his Complaint against the defendants on December 20, 2021.  See Compl.  He brings five Counts, alleging hostile work environment, disparate treatment, and retaliation, in violation of the ADA, 42 U.S.C. §§ 12111 et seq., as amended; the RA, 29 U.S.C. §§ 794 et seq.; and Fourteenth Amendment rights.  Apatow asserts violation of his equal protection and due process rights in Count One against each of the defendants.  In Count Two, which he brings against Stratford, he alleges that the Town's actions constitute wrongful termination in violation of public policy under Connecticut state law.  Count Three, also brought against Stratford, alleges municipal liability for the constitutional violations asserted in Count One.  Count Four, like Count One, asserts violations of the ADA, 42 U.S.C. §§ 12111 et seq., as amended, and RA, 29 U.S.C. §§ 794. et seq., but Apatow alleges that Stratford is liable as opposed to the individual defendants.  Count Five alleges intentional infliction of emotional distress against all the defendants under Connecticut state law.

In response, the defendants filed a Motion to Dismiss all counts on the grounds that Apatow failed to state a claim for relief that is facially plausible.  <u>See</u> Mot. to Dismiss; Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") (Doc. No. 13-1).  The plaintiff opposes this Motion.  <u>See</u> Plaintiff's Opposition ("Pl.'s Opp.") (Doc. No. 21); Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Mem.") (Doc. No. 21-1).

### III. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  <u>See</u> <u>La Liberte v. Reid</u>, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  <u>Iqbal</u>, 556 U.S. at 678.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> (internal citations omitted).

## IV. DISCUSSION

### A.      Official Capacity Claims

Apatow raises claims in Counts One and Five against the Town of Stratford as well as McGrath, Ing, and Hoydick in their individual and official capacities.  The defendants move to dismiss all claims against McGrath, Ing, and Hoydick in their official capacities as duplicative of the claims brought against the Town of Stratford.  Defs.' Mem. 1, 23.  In his Memorandum in Opposition, Apatow fails to address defendants' argument on this issue.

Official-capacity suits are only "one way of pleading an action against an entity of which an officer is an agent."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.55 (1978).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir .2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself.").

"Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant."  Phillips v. County of Orange, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (collecting cases); see also Jones v. Sansom, 2022 WL 972445, at *9–10 (D. Conn. Mar. 31, 2022) (dismissing Equal Protection and Due Process claims against individuals in their official capacity as redundant to the claims against the city); Mr. Quinn v. Gould, 2020 WL 1234553, at *5 (D. Conn. Mar. 13, 2020) (dismissing claims against a police chief in his official capacity as "duplicative of the

claims against the City"); <u>Olschafskie v. Town of Enfield</u>, 2015 WL 9239742, at *1 (D.

Conn. Dec. 17, 2015) (determining that where a plaintiff brings "municipal liability claims

against the Town under both federal and state law, the official capacity claims against

the individual officers are redundant.).

The only claims Apatow brings against the individual defendants in their official

capacity are also brought against the Town of Stratford.  As such, they are redundant,

and it is unnecessary to sue McGrath, Ing, and Hoydick in their official capacities.

Moreover, dismissing the official capacity claims does not limit Apatow's recovery

because he does not seek injunctive relief.  Compl. at 13.

Accordingly, the claims against McGrath, Ing, and Hoydick in their official

capacity in Counts One and Five are dismissed.

B.    <u>Individual Capacity Claims Against Ing and Hoydick</u>

Though Apatow asserts claims against Ing and Hoydick in their individual

capacity in Counts One and Five, there is only one allegation in the Complaint that

specifically addresses their conduct.  Compl. ¶ 41.  In particular, Apatow avers that

"defendants McGrath, Ing and Hoydick demanded the arrest and investigatio [sic] of the

plaintiff and orchestrated and participated in the unlawful termination of the plaintiff."  <u>Id.</u>

Beyond this conclusory statement, there are no supporting allegations outlining any

involvement by Ing and Hoydick.  Indeed, the other allegations refer simply to "the

defendants" without further clarification.  <u>See, e.g.</u>, Compl. ¶¶ 18, 28–30, 39.  These

vague allegations fall short of meeting <u>Iqbal</u>'s requirements.  Even though the court

must accept all factual allegations in the Complaint as true, there is insufficient factual

allegations to plausibly suggest Ing and Hoydick violated Apatow's constitutional rights

or intentionally inflicted emotional distress.  Thus, the claims against Ing and Hoydick in their personal capacity in Count One and Count Five are dismissed without prejudice.

> C.    Equal Protection Claim in Count One

The first ground upon which the defendants move to dismiss is that the Complaint failed to state a plausible claim of an Equal Protection Clause violation, as enforced through section 1983 of title 42 of the United States Code.  See Defs.' Mem. at 8.  In opposition, Apatow avers two potential grounds for an Equal Protection Clause violation: disability discrimination and retaliation, as well as differential treatment on the basis of his complaints about the workplace.  See Compl. ¶ 3.

Section 1983 affords a cause of action against any person who, acting under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution and U.S. law.  See 42 U.S.C. § 1983.  "By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

> 1.    The Equal Protection Clause Does Not Apply to Claims of Disability
>        Discrimination and Retaliation

Here, the Equal Protection Clause is invoked as the source of the right being deprived.  Apatow's first basis for the violation—disability discrimination and retaliation—is barred because "the equal protection clause does not apply to claims of disability-related discrimination or retaliation in employment."  Koenig v. City of New Haven, 2017 WL 631190, at *12 (D. Conn. Feb. 15, 2017); see also Chick v. County of Suffolk, 546 F. App'x 58, 60 (2d Cir. 2013) (summary order) (holding that plaintiff's equal protection clause "claim that he was discriminated against based on his alleged disability[ ] was not cognizable" because "disability is not a suspect classification under

the Equal Protection Clause. . . .").  "[F]reedom from discrimination on the basis of disability is a right secured by statute . . . not by the Constitution."  Fierro v. N.Y.C. Dep't of Educ., 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014).  Accordingly, an employment-based disability discrimination claim "is not actionable" under section 1983.  Id.  As a result, a plaintiff's claim that his Equal Protection rights were violated because defendants discriminated against him based on his real or perceived disability must be dismissed.  The rule barring section 1983 claims arising out of disability discrimination in this context also applies to "employment retaliation based on disability."  Koenig, 2017 WL 631190, at *12.

In his opposition to the Motion to Dismiss, Apatow counters by pointing to a footnote in the Fierro decision.  Pl.'s Mem. 12–13.  He argues that the footnote supports the proposition that only section 1983 disability discrimination and retaliation claims against defendants in their official capacity must be dismissed.  Id.; Fierro, 994 F. Supp. 2d at 590 n. 9 (opining that section 1983 claims against defendants in their individual capacity "are not automatically dismissible" on the ground that the ADA alone confers the right to be vindicated "because individual liability is available under § 1983, but not under the ADA.").  As a result, Apatow concludes that the claims against the individual defendants should not be dismissed.  Pl.'s Mem. 13.

However, this argument ignores that courts in this District and elsewhere in the Second Circuit have not adopted this reading and, to the contrary, have dismissed such claims against defendants in their individual capacity on this ground.  See, e.g., McArthur v. City of Stamford, 2019 WL 1559431, at *1-2 (D. Conn. Apr. 10, 2019); Abbott v. New York State Div. of State Police, 2020 WL 5802236, at *3–4 (N.D.N.Y.

Sept. 29, 2020); <u>Bonds v. Cnty of Westchester</u>, 2020 WL 4347704, at *8, 12 (S.D.N.Y.

July 28, 2020); <u>A.K. v. Westhampton Beach Sch. Dist.</u>, 2019 WL 4736969, at *18–19

(E.D.N.Y. Sept. 27, 2019).

Because the Equal Protection Clause does not apply to claims of disability

discrimination and retaliation in the employment context, the court dismisses this basis

for a section 1983 Equal Protection violation in Count One with prejudice.

2. The Equal Protection Clause Does Not Apply to "Class of One" Claims of Differential Treatment Regarding Workplace Complaints in Public Employment Context

Apatow's second basis for an equal protection violation—that is, differential

treatment arising out of his complaints about the workplace—also fails.

The Equal Protection Clause "is essentially a direction that all persons similarly situated

should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439

(1985). A plaintiff may bring a "class of one" equal protection claim "where the plaintiff

alleges that [he] has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment." <u>Village of</u>

<u>Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

That being said, the Supreme Court and the Second Circuit both have held that

"class of one" claims do not apply to public employment. <u>Engquist v. Or. Dep't of Agric.</u>,

553 U.S. 591, 607 (2008) (holding that "the class-of-one theory of equal protection has

no application in the public employment context"); <u>Appel v. Spiridon</u>, 531 F.3d 138, 141

(2d Cir. 2008) (recognizing that the "the Equal Protection Clause does not apply to a

public employee asserting a violation of the Clause under a 'class of one' theory", and

overruling any Second Circuit precedent that conflicts with the <u>Engquist</u> holding).

Because Apatow is a firefighter employed by Stratford, he is a public employee who is

9

barred from raising such claims.  See Mancuso v. Village of Pelham, 2016 WL 5660273, at *13 (S.D.N.Y. Sept. 29, 2016) (determining that a plaintiff who was a "firefighter employed by the Village" was a public employee); O'Hanlon v. City of Danbury, 2009 WL 586278, at *2–3 (D. Conn. Mar. 9, 2009) (dismissing "class of one" claims raised by individuals who were denied employment with the town fire department).  Accordingly, the Equal Protection claim cannot proceed under a "class of one" theory: it is dismissed with prejudice.

> 3.   The Selective Enforcement Theory of an Equal Protection Violation Remains Viable in the Public Employment Context

Apatow attempts to circumvent the "class of one" result by styling his claim as "a violation of Equal Protection pursuant to selective enforcement."  Pl.'s Mem. 12. Selective enforcement and class of one are different variations of Equal Protection claims that share many similarities while remaining distinct.  See Hu v. City of New York, 927 F.3d 81, 91–96 (2d Cir. 2019) (discussing the two theories at length).  To prevail on a selective enforcement claim, a plaintiff must show both "(1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Doninger v. Niehoff, 642 F.3d 334, 357 (2d Cir. 2011) (quoting Harlen Assocs. V. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2011).  Selective enforcement claims "require[ ] a 'reasonably close resemblance' between a plaintiff's and a comparator's circumstances."  Hu, 927 F.3d at 93.  Under this standard, "a plaintiff must specify at least one instance in which he was treated differently from another similarly situated."  Id. at 101.  Moreover, at the Motion to Dismiss stage, the

court need not decide whether two comparators are sufficiently similar, <u>Brown v. Daikin</u> <u>Am. Inc.</u>, 756 F.3d 219, 230 (2d Cir. 2014) ("Ordinarily, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss."), but only that the plaintiff has alleged sufficient facts to "nudge" the claims "across the line from conceivable to plausible", <u>Iqbal</u>, 556 U.S. at 680.

Notably, the Second Circuit has not yet decided whether the <u>Engquist</u> decision bars malice-based selective enforcement claims in the public employment context.  <u>Hu</u>, 927 F.3d at 100 n.5; <u>see also</u> <u>Emmerling v. Town of Richmond</u>, 434 F. App'x 10, 12 (2d Cir. 2011) ("This Circuit has not yet decided whether selective enforcement claims are still viable in the public employment context after <u>Engquist</u>. . . .").  To date, district courts in the Circuit have reached divergent conclusions.  <u>Compare, e.g.</u>, <u>Airday v. City of New</u> <u>York</u>, 2020 WL 4015770, at *2–7 (S.D.N.Y. July 16, 2020) (concluding <u>Engquist</u> did not bar a malice-based selective enforcement claim against a public employer), <u>with</u> <u>Ramirez v. Town of Oxford</u>, 2022 WL 3646203, at *8 (D. Conn. Aug. 24, 2022) ("[T]he holding and result in <u>Engquist</u> compel the conclusion that malice-based equal protection claims may not proceed in the public employment context.").  On this question, the court concurs with the <u>Ramirez</u> analysis, assessing that, even though the Supreme Court did not "tease out the distinction between class-of-one claims based on evidence of mere arbitrariness as opposed to outright malice," the principle of "<u>stare decisis</u> compels a lower court to follow the judgments of the Supreme Court and not just their reasoning." 2022 WL 3646203, at *9.  Thus, this court concludes that <u>Engquist</u>'s prohibition on

"class of one" claims in the public employment context extends to malice-based selective enforcement claims as well, and this claim is dismissed with prejudice.

      D.    <u>Due Process Claim in Count One</u>

      The defendants move to dismiss Apatow's claim that the government deprived him of his right to due process throughout his tenure with the SFD.  <u>See</u> Defs.' Mem. 11–15.  Apatow counters by arguing that he has plausibly pled a substantive due process violation as a result of the state of the workplace environment as well as his arrest and prosecution following termination.  <u>See</u> Pl.'s Mem. 13–18.

      "[N]ot all wrongs perpetrated by a government actor violate due process."  <u>Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.</u>, 298 F.3d 168, 173 (2d Cir. 2002).  To survive a Rule 12(b)(6) motion, a substantive due process claim "must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  <u>Velez v. Levy</u>, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks omitted).  This "shocks the conscience" test is "necessarily imprecise", <u>O'Connor v. Pierson</u>, 426 F.3d 187, 203 (2d Cir. 2005), but because "[s]ubstantive due process is an outer limit on the legitimacy of governmental action[,] . . . [s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 263 (2d Cir. 1999).

      Apatow's first basis for a potential substantive due process violation centers on the defendants' indifference to the harmful state of the workplace.  However, Apatow does not state a facially plausible claim with respect to this assertion.  Even assuming Apatow was subjected to increased scrutiny following his complaints, received harsher

discipline than others, suffered through insensitive comments about the race of his girlfriend's son, and was forced to work in an environment replete with heated arguments, this falls short of violating substantive due process.  See, e.g., Williams v. Perry, 960 F. Supp. 534, 539 (D. Conn. 1996) ("Derogatory remarks, reassignments, lack of assignments, higher standards of performance and conduct, and harsher discipline all fail to rise to the level of the delict necessary to set forth a substantive due process claim."); Bertram v. Metro. Transp. Auth., 2014 WL 748933, at *8 (S.D.N.Y. Feb. 26, 2014) (determining that "seemingly arbitrary and perhaps unfair" discipline and harassment do "not shock the conscience. . . ."); Sweeney v. Enfield Bd. of Educ., 2016 WL 4435331, at *9 (D. Conn. Aug. 18, 2016) ("[A]n unfair investigation resulting in discipline does not violate substantive due process.").  While "deliberate indifference" to a supervisee's wrongful behavior may "shock the conscience" in instances "where the government owes a special duty of care to those in its charge," such as a person held in detention, that is inapplicable to the case at hand.  O'Connor, 426 F.3d at 203.

Apatow also does not offer facts sufficient to "shock the conscience" with respect to the alleged substantive due process violation claim arising from the defendants' reporting his conduct to the police and subjecting him to prosecution.  The Complaint does not provide detail on the incident that the defendants allege led to Apatow's firing—noting only that the plaintiff was forced to "defendant [sic] himself," Compl. ¶ 33—but allegations that the defendants' reported a physical altercation to the police and the ensuing prosecution are insufficient to shock the conscience.  There is no allegation—beyond conclusory statements—that the arrest or prosecution arose from false complaints or malice.  Even if such facts were pleaded, they would point towards

the tort of malicious prosecution, see Bhatia v. Debek, 287 Conn. 397, 404–411 (2008), or a section 1983 claim of malicious prosecution, rather than substantive due process. Notably, the Supreme Court has "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law. . . ." Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992). In fact, the Court's reasoning "applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." Id. Accordingly, both of Apatow's substantive due process claims fail and are dismissed without prejudice to replead.

     E.     ADA and RA Claims in Counts One and Four

The defendants contend that Apatow did not sufficiently state a plausible claim for relief under the ADA and the RA. Defs.' Mem. 19. In opposition, Apatow asserts that he has adequately alleged disability discrimination as well as a hostile work environment under the ADA. Pl.'s Mem. 25–27. The court will address the ADA claim first, then the RA claim.

A plaintiff challenging disability-based discrimination under the ADA must establish a prima facie case, which consists of a showing that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020). In delineating which entities are subject to the ADA, the Act defines covered employers as those "engaged in an industry affecting commerce who ha[ve] 15 or more employees for each working day

in each of 20 or more calendar weeks in the current or preceding calendar year. . . ." 42 U.S.C. § 12111(5)(A).

Apatow's Complaint does not include allegations that the SFD is a covered employer under the ADA.  There is no mention of how many employees SFD has or whether the firefighters meet the working requirements laid out in the ADA.  While a prima facie case for retaliation under the ADA requires meeting different elements, see Zuro v. Town of Darien, 432 F. Supp. 3d 116, 126 (D. Conn. 2020), an employer must still meet the ADA's definition of a covered employer for such a claim to be viable.

Apatow's hostile work environment allegation suffers from the same deficiency. While the Second Circuit has deemed such claims cognizable under the ADA, Fox v. Costco Wholesale Corp., 918 F.3d 65, 73 (2d Cir. 2019), that Court's rationale is that the claim is rooted in the text of Title I of the ADA, id. at 74 (holding that the ADA's language prohibiting a "covered employer" from discriminating on the basis of a disability was borrowed from Title VII, and that in doing so, Congress "intended for the ADA to be coextensive, at least in this respect, with Title VII. . . . [I]t follows that disabled Americans should be able to assert hostile work environment claims under the ADA. . . and we here so recognize.") (internal quotations and citation omitted).  Without any facts from which to infer that the SFD is a covered employer under the ADA, both of these claims fail and must be dismissed.

A prima facie case for retaliation under the RA requires meeting the same elements as the ADA, though tailored to fit the RA.  Benson v. Westchester Med. Ctr., 2022 WL 2702544, at *10 (S.D.N.Y. July 12, 2022)  A plaintiff must prove "(1) that she is a 'handicapped person' under the Act, (2) that she is 'otherwise qualified' for the

position sought, (3) that she is being excluded from the position solely by reason of her handicap, and (4) that the position exists as part of a program or activity receiving Federal financial assistance."  Sedor v. Frank, 42 F.3d 741, 746 (2d Cir. 1994) (internal citations omitted).  Much like Apatow's failure to state any facts to support that SFD is a covered employer under the ADA, the Complaint also fails to assert any allegations that SFD receives federal funding such that it is subject to the Retaliation Act.  Thus, the court dismisses Apatow's claim under the RA in Count Four as well.  However, the ADA and RA claims in Count Four are dismissed without prejudice to replead.

   F. Wrongful Termination in Violation of Public Policy in Count Two

   The Town of Stratford argues that the wrongful termination claim must be dismissed because Apatow is not "otherwise without remedy" for the alleged unlawful termination.  Defs.' Mem. 15–17.  In opposing the Motion, Apatow highlights that the cause of action is not attacked in any other way, and that his claim meets the standards set out in applicable law.  Pl.'s Opp. 18–20.

    In Connecticut, "public policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will."  Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 476 (1980).  Thus, a common law cause of action for wrongful termination may be maintained where "the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy."  Id. at 480.  "[T]he public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one", Parsons v. United Techs. Corp., 243 Conn. 66, 79 (1997), and the Connecticut Supreme Court has cautioned that "courts should not lightly intervene to

impair the exercise of managerial discretion or to foment unwarranted litigation", Sheets, 179 Conn. at 477.

To prevail on a claim of wrongful termination, a plaintiff must: "(1) plead that the alleged conduct by the employer contravenes public policy and (2) demonstrate that the plaintiff is 'otherwise without remedy' and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." Lopez v. Burris Logistics Co., 952 F. Supp. 2d 396, 405 (D. Conn. 2013) (quoting Burnham v. Karl and Gelb, P.C., 252 Conn. 152, 159–160 (2000). On the other hand, if a "relevant state or federal law contains a private right of action which serves to protect the public policy allegedly violated, a wrongful discharge claim will fail." Nanos v. City of Stamford, 609 F. Supp. 2d 260, 268 (D. Conn. 2009).

Apatow argues that his wrongful termination claim is viable as a violation of public policy because his workplace was not reasonably safe, contravening sections 31-49 and 31-370 of the Connecticut General Statutes. Pl.'s Mem. 19. Apatow cites Parsons to buttress this argument, Pl.'s Mem. 19, where the court recognized:

> Both §§ 31–49 and 31–370 reflect a broad legislative concern for the physical welfare and safety of Connecticut employees. Consequently, we are persuaded that the mandate of public policy that these statutes embody gives a Connecticut employee a cause of action for wrongful discharge against an employer transacting business in Connecticut if the employee is discharged for refusing to work under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties.

243 Conn. at 80.[2] That being said, the key to the claim for wrongful termination in violation of the public policy embodied in sections 31-49 and 31-370 is that the

---

[2] Apatow used an ellipsis to obscure a vital phrase in the block quote above. Pl.'s Mem. 20 ("[G]ives a Connecticut employee a cause of action for wrongful discharge against an employer

employee "be discharged for refusing to work under [such] conditions."  Id.  In Parsons,

for example, the plaintiff was fired for refusing to report to non-military work at an

airbase in Bahrain following State Department warnings against non-essential travel to

the region as well as war breaking out in the Persian Gulf.  Id. at 84–86.  However, in

the case at bar, there is no allegation that Apatow was fired for refusing to report to

work in light of the hostile work environment.  Instead, Apatow alleges he was

terminated for complaining about the work environment and the psychological issues

the hostility engendered.  That is the very basis of his claims under the ADA and the

RA.  Given that causes of action under the ADA and RA remain available should

Apatow replead—in addition to other potential claims, e.g. hostile work environment,

under Title VII of the Civil Rights Act of 1964 or the Connecticut Fair Employment

Practices Act—there are statutory remedies that can vindicate the significant public

policy interests at issue in his case.

The wrongful termination claim in Count Two is therefore dismissed because

Apatow has failed to allege that he is "otherwise without remedy."

G.    Monell Claim in Count Three

The defendants move to dismiss Count Three on the ground that it fails to state a

claim against the Town of Stratford.  Defs.' Mem. 17.  Apatow alleges that Stratford

incurred municipal liability for failing or refusing to: (1) distribute policies related to

---

transacting business in Connecticut . . . [involving] conditions that pose a substantial risk of death. . . .").
The court cautions counsel that omitting damning language will not make those words disappear.

workplace violence, Compl. at ¶ 44, (2) train SFD employees about policies related to workplace violence, id. at ¶ 45, or (3) deter workplace violence, id. at ¶ 47.

To properly bring a claim of municipal liability, commonly known as a Monell claim, a plaintiff must allege sufficient facts to plausibly show: (1) "that [he] suffered a constitutional violation," and; (2) "that the violation resulted from an identified municipal 'policy,' 'custom,' or 'practice.'"  Parker v. City of Long Beach, 563 F. App'x 39, 41 (2d Cir. 2014) (citing Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. at 690–91).  "Monell also recognizes liability where a municipality's failure to train its employees . . . amount[s] to deliberate indifference to the rights of persons with whom the untrained employees come into contact."  Id. (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)).

A policy, custom, or practice "need not be memorialized in a specific rule or regulation."  Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) (internal quotations and citation omitted).  A Monell claim may still succeed when the constitutional violations are so "persistent and widespread . . . so permanent and well settled" that they "constitute a 'custom or usage' with the force of law."  Sorlucco v. N.Y.C. Police Dep't., 971 F.2d 864, 870–71 (2d Cir. 1992) (internal quotations and citations omitted). However, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotations and citations omitted).

With the Equal Protection and substantive due process claims dismissed, Apatow has failed to plausibly plead any violation of his constitutional rights such that

Stratford would be subject to municipal liability.[3]  Because Apatow has failed to plead facts sufficient to assert a Monell claim, the defendants' Motion to Dismiss is granted as to Count Three.  The court dismisses this claim without prejudice to replead.

H.    Intentional Infliction of Emotional Distress in Count Five

Defendants move to dismiss the intentional infliction of emotional distress claim in Count Five for failing to allege conduct that is extreme and outrageous.  Defs.' Mem. 20.  In opposing the motion, Apatow avers that he has alleged conduct that goes beyond the bounds of what is tolerated by a decent society.  Pl.'s Mem. 27–28.

To prevail on an intentional infliction of emotional distress claim in Connecticut, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Watts v. Chittenden, 301 Conn. 575, 586 (2011) (quoting Appleton v. Bd. of Educ. of the Town of Stonington, 254 Conn. 205, 210 (2000)).

---

[3] If the plaintiff successfully repleads a violation of a constitutional right, this court notes that the Monell claim—as currently drafted—is still insufficient to satisfy Iqbal's pleading standard. Iqbal, 556 U.S. at 678.  While the Complaint notes that numerous "heated arguments" have occurred among firefighters in the last twenty-one years, Compl. ¶ 22, only four incidents leading to injury or property damage are alleged, id. at ¶¶ 33, 36–38.  Moreover, only one date is provided for an incident of workplace violence with the time that has elapsed between each altercation unknown.  Id. at ¶ 37.  The chronology and number of Apatow's complaints about the racially offensive language used, as well as the physical and psychological distress he was experiencing, are similarly unaddressed.  As such, even if these incidents are plausibly pled as constitutional violations, they fall well short of being "so permanent and well settled" that they "constitute a 'custom or usage' with the force of law."  Sorlucco, 971 F.2d at 870–71.  A "failure to train" may constitute an "official policy or custom if the failure amounts to 'deliberate indifference' to the rights" of those with whom the public employee interacts. Waller v. City of Middletown, 89 F. Supp. 3d 279, 284 (D. Conn. Feb. 24, 2015).  While that test is slightly different, it is also worth noting for the sake of potential repleading that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Connick, 563 U.S. at 61 (2011).

The court's Ruling as to Count Five turns on the second element.  Regarding that element, "[p]laintiffs in Connecticut are held to a stringent standard when attempting to demonstrate that a defendant's conduct was 'extreme and outrageous.'"  Sangan v. Yale Univ., 2006 WL 2682240, at *7 (D. Conn. Sept. 15, 2006).  To rise to the level of extreme and outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003) (quoting Appleton, 254 Conn. at 210–11).  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."  Appleton, 254 Conn. at 211 (quoting Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 19 (1991)).  Rather, the conduct must be "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  DeLaurentis v. City of New Haven, 220 Conn. 225, 267 (1991).

"In the workplace, the threshold for demonstrating extreme and outrageous conduct is higher: '[i]t is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace.'"  Brown v. Hearst Corp., 2015 WL 5010551, at *7 (D. Conn. Aug. 24, 2015) (quoting Perodeau v. Hartford, 259 Conn. 729, 757 (2002)).  "Generally, personnel actions or workplace conduct that falls within the reasonably expected vicissitudes of employment, including insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings, even if unlawful, are usually not deemed extreme and

outrageous conduct." Craig v. Yale Univ. Sch. of Med., 838 F. Supp. 2d 4, 10 (D. Conn. 2011) (citation and internal quotation marks omitted).

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.  Only where reasonable minds disagree does it become an issue for the jury." Appleton, 254 Conn. at 210 (citation omitted).

It is unclear from the Complaint and Apatow's Memorandum in Opposition precisely what conduct he alleges is extreme and outrageous.  If Apatow intends to assert that it was the discrimination and retaliation he experienced at SFD, his claim fails.  Courts in the District of Connecticut have repeatedly determined that "discrimination" and "retaliating against an employee for complaining about such discrimination[ ] do not meet the standard for finding that conduct was extreme and outrageous." Koenig, 2017 WL 631190, at *13; Ucar v. Connecticut Dep't of Transp., 2016 WL 4275578, at *16 (D. Conn. Aug. 12, 2016); Lorenzi v. Conn. Judicial Branch, 620 F. Supp. 2d 348, 353 (D. Conn. 2009); see also White v. Martin, 23 F. Supp. 2d 203, 208 (D. Conn. 1998), aff'd sub nom. White v. Comm'n of Human Rights, Opportunities, 198 F.3d 235 (2d Cir. 1999).

Additionally, if Apatow is alleging that the circumstances of his termination—including the call to police, his arrest, and his subsequent prosecution—were extreme and outrageous, his claim also fails.  "Connecticut courts have held that a report to the police typically does not constitute the type of 'extreme and outrageous' conduct necessary to support a claim for intentional infliction of emotional distress." Wade v. Kay Jewelers, Inc., 2018 WL 4440532, at *9 (D. Conn. Sept. 17, 2018); see Crocco v.

Advance Stores Co., Inc., 421 F. Supp. 2d 485, 504 (collecting cases); Pantaleo v. Ravski, 1997 WL 94103, at *3 (Conn. Sup. Ct. Feb. 14, 1997) ("[C]ourts in Connecticut and elsewhere have concluded that calling the police to report suspected wrongdoing normally does not constitute 'extreme and outrageous' conduct sufficient to impose liability for intentional infliction of emotional distress."). An example of a nontypical situation where a call to police might constitute "extreme and outrageous" conduct is when a false report is made concerning a particularly serious crime or for a vindictive purpose. See Crocco, 421 F. Supp. 2d at 505; Jezierny v. Brown, 2005 WL 2496525, at *3 (Conn. Sup. Ct. Aug. 25, 2005). However, there are no allegations that the defendants lied to police or made a false report to induce Apatow's arrest. Indeed, Apatow readily admits that he participated in a physical altercation with a colleague, Compl. ¶ 33, which appears to be the grounds for the call to police, his arrest, and his prosecution.[4]

In support of his intentional infliction of emotional distress allegation, Apatow asserts that a termination executed in a humiliating or inconsiderate manner may be enough to establish the claim. Pl.'s Mem. 28. Yet, the case for which that proposition is cited discusses only negligent infliction of emotional distress—a claim requiring only "unreasonable conduct . . . in the termination process"—rather than intentional infliction of emotional distress. Belanger v. Commerce Clearing House, 25 F. Supp. 2d 83, 84–85 (D. Conn. Oct. 26, 1998). Instead, the termination must rise to the level of extreme and outrageous conduct to make out a claim for intentional infliction of emotional

---

[4] The Complaint contains no details concerning Apatow's arrest and subsequent prosecution beyond stating their general occurrence. See Compl. ¶¶ 39, 41.

distress.  See, e.g., Muniz v. Kravis, 59 Conn. App. 704, 709 (concluding that plaintiff's firing was not extreme and outrageous where the defendants "sent an armed security guard to notify her and her husband of their termination" and gave "them only twenty-four hours to leave [their apartment on premises of employer] . . . at a time when the plaintiff was on vacation and when her husband was recovering from a planned surgery").

The other argument advanced by Apatow asserts that conduct that would not ordinarily be considered extreme and outrageous can become so if a defendant acts knowing of a plaintiff's heightened state of vulnerability.  Pl.'s Mem. 28.  For this proposition, Apatow cites a case where, instead of freezing and storing ovarian tissue to aid a couple in their desire to procreate, a hospital unilaterally disposed of the genetic material.  Witt v. Yale-New Haven Hosp., 51 Conn. Supp. 155, 179–183 (Conn. Sup. Ct. 2008).  Thus, the Witt decision, too, does not buttress the assertion for which it is cited. There, the court was "hard-pressed to imagine conduct that is any more outrageous and utterly intolerable in a society in which a couple's desire to procreate, thereby leaving an indelible mark in our societal fabric, is so fundamental as to be inviolable."  Id. at 181. However, no desire so fundamental as to be inviolable is implicated by Apatow's termination, nor does he allege conduct by defendants that similarly rises to the level of being "utterly intolerable in a civilized community."  Id.

Apatow has therefore failed to state a claim for intentional infliction of emotional distress, and the claim in Count Five is dismissed.

I.     Punitive Damages

Apatow's Complaint includes punitive damages in the prayer for relief.  Compl. at 13.  However, as the defendants point out, see Defs.' Mem. 24, punitive damages are

not available against a municipality under the three statutes pursuant to which Apatow brings his federal claims.  Apatow, on the other hand, does not respond to this argument in his Memorandum in Opposition.

As a general rule, "no punitive damages are allowed [against a municipality] unless expressly authorized by statute."  Cook County v. United States ex rel. Chandler, 538 U.S. 119, 129 (2003) (quoting Newport v. Fact Concerts, Inc., 453 U.S. 247, 260 n.2 (1981)).  With respect to section 1983 claims, the U.S. Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."  Newport, 453 U.S. at 271.  Similarly, the Supreme Court has concluded that punitive damages may not be awarded in suits against municipalities under the Rehabilitation Act, Barnes v. Gorman, 536 U.S. 181, 189 (2002), and this court has determined that punitive damages against a municipality are unavailable under the ADA.  Palmieri v. City of Hartford, 947 F. Supp. 2d 187, 207 (D. Conn. 2013) (collecting cases).

Punitive damages are also an issue with respect to the state law claims.  See Defs.' Mem. 24.  As the Appellate Court of Connecticut has acknowledged:

> In the overwhelming majority of jurisdictions which have considered [whether a municipality is liable for punitive damages], it is now firmly established that exemplary or punitive damages are not recoverable unless expressly authorized by statute or through statutory construction. . . .

Hartford v. Int'l Ass'n of Firefighters, Local 760, 49 Conn. App. 805, 817 (1998), cert. denied, 247 Conn. 920 (1998) (quotation and citation omitted).  Because both of Apatow's state claims are rooted in the common law, there is no statutory authorization for imposing punitive damages on a municipality.

As such, even if Apatow repleads where possible, he cannot recover punitive damages from the Town of Stratford with respect to claims in Counts One through Five.

## V. CONCLUSION

For the reasons stated above, the Motion to Dismiss (Doc. No. 13) is granted.  If Apatow chooses to amend his Complaint, the court grants him leave to do so within 21 days consistent with this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of January 2023.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge